## Case No. 702.

### BABCOCK v. TERRY.

[1 Lowell, 66.] [1]

District Court, D. Massachusetts. April, 1866.

SEAMEN — WAGES — CONTRACT BETWEEN MASTER AND OWNER—PASSAGE MONEY — MASTER'S COMMISSIONS.

1. Where the contract between the master and owners of a whaleship was, that if the former should procure four thousand barrels of oil, or a full ship, he should have a lay of one-sixteenth, otherwise a lay of one-seventeenth, and the evidence showed that he brought home a full cargo, and that the ship was well stowed, but that the number of barrels was much less than four thousand, held, the master was entitled to the larger lay.

2. Where the master after filling his ship with sea-elephant oil, left behind him at the island where the oil had been obtained some of his ship's company to pursue the business, and the owners afterwards sent out another vessel under another master and brought home the oil made by those men after the former master had left them, held, that the former master could not claim a lay in that oil.

3. When the ship has not the means to cure a seaman who is taken ill on a whaling voyage, and he is cared for on shore, the reasonable expenses of his care and cure are chargeable to the ship.

[See The Monongahela, Case No. 9,712.]

4. The case of Hazard v. Howland [Case No. 6,280] followed in the matter of penalty on a master for bringing spirits on board the ship, and permitting them to be used there contrary to the articles.

5. The master of a whaleship has no right to charge a commission on the money paid out to the crew in the course of the voyage.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

6. Where the master of a ship gave to another shipmaster, whom he brought home as a passenger, a receipt for $150 passage-money, *held*, that he was justly chargeable with the full amount, notwithstanding his testimony that he received only $75, and gave the receipt for the larger sum "for the benefit" of the passenger, which the court understood to mean that the latter might be able to charge that sum to his owners.

[In admiralty. Libel by Daniel S. Babcock, master of the ship Samuel Robertson, against Isaiah F. Terry, the owner, for wages and advances. Decree for libellant.]

The libellant was the master of the ship Samuel Robertson, of Fairhaven, on a voyage made several years since for whale and sea-elephant oil. The cause now came up on exceptions to the report of an assessor, and to settle certain points which had not been submitted to him. The chief object of the voyage was to procure the oil of the sea-elephant or walrus, which was a new branch of industry when this voyage began, and had only been carried on from New London, out of which port the libellant had sailed as mate on a similar voyage. The sea-elephant is taken on shore at Hurd's island, an uninhabited place which lies very low in the southern latitudes, and has a boisterous and uncertain climate. The animals are killed and stripped on shore, and the blubber is dragged and rafted to the beach and put on board a tender, to be carried to the ship and tried into oil, there being no anchorage fit for large vessels within about three hundred miles. Captain Babcock lost his tender on the day of her arrival at the island, and sent home for another, and in the mean time left his second mate and some of the men to catch sea-elephants, and himself cruised for whales, but without much success. When the new tender came out, the chase of sea-elephants was pursued with diligence, and the ship received a cargo and returned with it to New Bedford. The libellant left the new tender with a sufficient crew at Hurd's island, making a new contract with them conditioned to be void if the owners sent out the same or any other ship. They did send out the Arab, under another master, and she made a voyage and brought home, among other things, fifteen hundred barrels of oil which had been made by the crew of the tender after the Samuel Robertson had sailed for home. The libellant demanded a lay of one-sixteenth in all the oil brought home by him, and in the fifteen hundred barrels made by the men whom he left on the island; five per cent on sales of slops; five per cent on moneys advanced to the crew, and his whole disbursement account. The respondent disputed several items of the account; admitted a lay of one-seventeenth only in the oil brought home; and claimed a deduction from his lay for breach of the shipping articles by the libellant in bringing distilled spirits on board the ship at sundry times, and for negligence and want of skill. The facts on which the decision of these points depended are stated in the opinion of the court.

A. S. Cushman, for libellant.
J. C. Stone, for respondent.

LOWELL, District Judge. To begin with the master's general conduct. The evidence does not show that he was either careless or unskilful. He was certainly unfortunate in the loss of his tender, and in the small amount of whales taken in his off-shore cruise; but the preponderance of the evidence is, that these results were not owing to his fault. It was said that I must give greater weight to the evidence against him than to that in his favor, because the witnesses taken from the ship were reluctant to say any thing to his discredit. But after making whatever allowance I can discover to be due to apparent or probable bias, I must decide the case, after all, upon what the witnesses say, and not upon what they might have said had they testified differently. And the whole evidence convinces me that, excepting in the matter of distilled spirits, to which I shall recur presently, the master exerted himself with reasonable care and skill, and with rather uncommon diligence for the promotion of the best interests of the voyage. Upon the special matter of the slops, the assessor is satisfied that the master has duly accounted for them; and I see no reason to vary his award in that respect, nor to charge him with the value of certain articles stolen from the wreck of the Alfred. On the other hand, I cannot allow the master a commission on moneys advanced to the crew. His contract expressly provides for the commission on sale of slops, but mentions no other; the usage of the trade is against it, and so is the reason of the thing. The commission on the sales is intended to compensate him for his trouble in making them, and to ensure his selling to the best advantage. The necessary advances to the crew are made as a part of a master's ordinary duty, and from the owner's money; the trouble is slight, and the responsibility nothing. I affirm the assessor's disallowance of the charge.

Nor can I allow the libellant a lay in the oil taken at Hurd's island after he sailed for home. The contract made with the men whom he left behind, appears to have been carefully drawn, with the intention of giving the owners full control over this matter. They have seen fit to allow a lay in this oil to the master and crew of the Arab, who took it on board, and brought it home; and I cannot say they have acted unjustly. These men did a certain amount of work upon this oil, and are better entitled than those who came home in the Samuel Robertson to some share in its value. The libellant took the responsibility of the enterprise, and this may entitle him to some considera-

tion from the owners; but he has no legal claim which a court can ascertain and enforce.

The amount of the master's lay depends upon the construction of the special contract as applied to the facts of the case. It was agreed, that if the master procured on board the ship four thousand barrels of oil, or a full ship, his lay was to be one-sixteenth, otherwise one-seventeenth. The ship brought home somewhat over three thousand four hundred barrels, and the evidence is clear that she was full, and there is no proof that she was badly stowed. The respondent says that the ship did, on one occasion, bring a good deal more. He gives the number of gallons, by which it appears she had a little more than thirty-five hundred barrels, besides a considerable quantity of bone, said, in the argument, to be equivalent to some two hundred barrels of oil. It does not appear that she ever did or could bring four thousand barrels, or very near that amount.

Under these circumstances, it is fair to assume the libellant's construction of the agreement, and hold that he was to procure a full cargo estimated at four thousand barrels, more or less, rather than to say with the respondent, that the specification was intended as a minimum, and that the larger share was dependent on his getting at least four thousand barrels. The former construction, it is true, rejects the demonstration as false; but then it appears to be false. Such a contract should be construed against the owners in a doubtful case, because they are supposed to know the capacity of the vessel, which the master certainly did not; and it is not to be presumed that they would establish as a minimum an amount of cargo larger than the vessel was ever known to carry. Upon the facts in evidence, the respondent's interpretation gives scarcely greater weight to the words, "or a full ship," than the other does to the "four thousand barrels," because it is not credible that they could in any event expect the vessel to bring more than the specified amount. This point then, not submitted to the assessor, I must decide for the libellant.

The assessor has rejected the whole of the very large bill charged by the libellant for the expenses connected with the illness, death, and burial of Mr. Briggs at Mauritius. As it appears, however, that the ship was unable to furnish the proper medicines and medical attendance, which the unfortunate situation of the chief officer demanded, the master was right in boarding him on shore. And after examination of the account, I have thought it right to allow one hundred and twenty-five dollars as a fair charge against the owners on this account. The George, [Case No. 5,329;] The Atlantic, [Id. 620.]

The next inquiry is, what penalty, if any, should be awarded for the breach of the article concerning spirituous liquors. And upon this, the case of Hazard v. Howland, [Case No. 6,280,] decided by Judge Sprague in 1863, is a direct authority. It was there adjudged that the owners have a right to say whether or not these liquors shall be used on their vessel for other than medicinal purposes; and further, that the penalty affixed by the articles, of a total forfeiture of wages, is one to be chancered by the court. In the present case the evidence is clear that the master wilfully violated this stipulation, and permitted his officers to have nearly as much whiskey as they liked. I must suppose that the discipline of the ship was injuriously affected by this laxity. What the actual pecuniary damage to the voyage was, it is impossible to say; and I shall deduct from the libellant's lay the sum of three hundred and seventy-five dollars, which is the penalty imposed by Judge Sprague, in the case cited, and in which the master's lay was very nearly what it is here.

There is but one item of account remaining to be considered. The respondent produced before the assessor, a paper signed by the libellant, acknowledging to have received one hundred and fifty dollars as the passage-money of one Captain Proctor, from Mauritius to New Bedford. The libellant testified that he received in fact but seventy-five dollars for this service; that the price receipted for was the fair price of a first-class passage, to which Captain Proctor was entitled, but that the accommodations actually furnished him did not come up to that description, and the receipt was given "for the benefit of Captain Proctor." This means, I suppose. that Proctor's owners were to pay for the accommodation he ought to have had, and Captain Proctor himself only for what he had. No doubt a receipt is open to explanation; but I am not satisfied with this explanation, which appears to involve a fraud on the persons who were ultimately to pay the passage-money. The owners of the Samuel Robertson were entitled to receive all that Captain Proctor's owners were bound to pay; it is not fit that one-half the money should be kept in the hands of the agents; and I am unwilling to believe that this was done. If the master has undertaken to release Captain Proctor from any part of the amount due for his passage, he must settle that account with him.

The account then stands thus: (The judge here stated the account in conformity with the above opinion.)

Decree for the libellant.

<hr>

BABCOCK, (TUTHILL v.) See Case No. 14,-275.

BABCOCK, (UNITED STATES v.) See Cases Nos. 14,484, 14,485, 14,486, 14,487, and 14,488.